**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Andrew C. Brown

*Counsel to Plaintiff Fred Stevens, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re                                                              :
                                                                   :   Chapter 7
JOSEPH A. BROWN,                                                   :
                                                                   :   Case No. 20-36251 (CGM)
                           Debtor.                                 :
-------------------------------------------------------------------x
FRED STEVENS, as Chapter 7 Trustee of the Estate                   :
of Joseph A. Brown,                                                :
                                                                   :
                           Plaintiff,                              :
                                                                   :   Adv. Pro. No. 21-_____
         -against-                                                 :
                                                                   :
JOSEPH A. BROWN,                                                   :
                                                                   :
                           Defendant.                              :
-------------------------------------------------------------------x

**COMPLAINT SEEKING A JUDGMENT AGAINST THE**
**DEBTOR DENYING DISCHARGE**

Fred Stevens, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Joseph A. Brown, the above-captioned debtor (the "Debtor"), by and through his counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his complaint (the "Complaint")[1] herein against the Debtor seeking the denial of the Debtor's discharge pursuant to sections 727(a)(3), (a)(4)(A) and

---
[1] Capitalized terms used but not immediately defined shall have the meanings assigned to them elsewhere in the Complaint.

(D), (a)(5), and (a)(6)(A) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4004(c) and 7001(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), alleges as follows:

**PRELIMINARY STATEMENT**

The Debtor has unnecessarily made the Trustee's job prohibitively difficult. The Trustee has provided the Debtor with numerous opportunities to turn over books and records, produce documents and amend or supplement materially false statements in his schedules and statements. The Debtor has intentionally and unjustifiably failed to do these things and has failed to communicate with the Trustee. For at least the following reasons, the Debtor's discharge should be denied by this Court:

- Failure to disclose ownership of real property at 144 Lucky Lake Drive, Rock Hill, New York 12775 on Schedule A;

- Failure to disclose ownership of a Movado wristwatch and other wristwatches on Schedule B, Question 12;

- Failure to disclose gambling losses in response to Question No. 15 on the Statement of Financial Affairs ("SoFA") or otherwise explain or disclose the use and dissipation of over $26,000 in cash withdrawn from ATM machines at various casinos in the sixteen months prior to the bankruptcy filing;

- Failure to disclose the transfer of a 2005 Meridian Yacht (the "Yacht") valued at approximately $175,000 within two years of the bankruptcy filing in response to Question No. 18 on the SoFA;

- Failure to disclose the existence of a storage unit and its contents in response to Question No. 22 on the SoFA;

2

- Producing materially false monthly income statements to the Trustee;

- Failure to produce those books, records and documents sought by the Trustee's subpoena issued pursuant to Bankruptcy Rule 2004 dated March 9, 2021, a copy of which is annexed hereto as Exhibit A (the "2004 Subpoena") as set forth on the document production catalog annexed hereto as Exhibit B; and

- Failure to produce those supplemental books, records and documents requested by the Trustee at the Debtor's Bankruptcy Rule 2004 examination that took place on May 27, 2021 (the "2004 Examination"), and as requested by supplemental letter request dated June 18, 2021, a copy of which is annexed hereto as Exhibit C.

The Trustee gave the Debtor every opportunity to correct the foregoing errors, omissions, misstatements and falsehoods, but the Debtor has inexplicably failed to do so. Accordingly, it is respectfully submitted that the Debtor's discharge must be denied.

## JURISDICTION

1.  This adversary proceeding relates to the chapter 7 bankruptcy case captioned *In re Joseph A. Brown*, Case No. 20-36251 (CGM), pending in the United States Bankruptcy Court for the Southern District of New York before the Honorable Cecelia G. Morris, Chief United States Bankruptcy Judge (the "Court").

2.  The Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 157(a) and (b) and 1334(b), and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

3.  Plaintiff consents to the entry of final orders or judgments by the Court with respect to all matters and claims raised by this Complaint.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this

proceeding arises in a case under the Bankruptcy Code pending in this district.

## BASIS FOR RELIEF

5. This adversary proceeding is brought pursuant to sections 727(a)(3), (a)(4)(A) and (D), (a)(5), and (a)(6)(A) of the Bankruptcy Code.

## PARTIES

6. The Trustee is a member of the panel of private trustees created by the United States Trustee for Region 2. The Trustee maintains offices at c/o Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036.

7. The Debtor is an individual with a principal place of residence at 144 Lucky Lake Drive, Rock Hill, New York 12775.

## FACTS COMMON TO ALL CAUSES OF ACTION

8. On December 29, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code [Docket No. 1].

9. On or around the Petition Date, Fred Stevens was appointed interim trustee of the Debtor's estate. On January 21, 2021, the Trustee presided over the first meeting of creditors in the Debtor's case pursuant to section 341(a) of the Bankruptcy Code (the "341 Meeting"), and the Trustee became the permanent Chapter 7 trustee herein by virtue of section 702(d) of the Bankruptcy Code.

### A. The 2004 Examination

10. On February 24, 2021, the Court issued an order authorizing the 2004 Examination of the Debtor (the "2004 Order") [Docket No. 20].

11. On February 26, 2021, the Trustee sent to Debtor's counsel a copy of the 2004 Order and a draft of the document demand that would be annexed to the 2004 Subpoena to be

4

issued when the parties agreed upon an examination date. The Trustee asked the Debtor through counsel to start putting together the documents requested, and asked for dates that the Debtor would be available for the 2004 Examination.

12.    On March 8, 2021, the Debtor, the Trustee and other participants agreed to conduct the 2004 Examination on April 8, 2021.

13.    On March 9, 2021, the Trustee issued the 2004 Subpoena to the Debtor and Debtor's counsel accepted service by email. The 2004 Subpoena called for the production of documents by March 19, 2021, and for the 2004 Examination of the Debtor on the agreed April 8, 2021 date.

14.    On March 26, 2021, counsel to Heritage Financial Credit Union ("HFCU") asked Debtor's counsel by email the status of producing documents. Debtor's counsel did not respond.

15.    On March 28, 2021, the Trustee asked Debtor's counsel by email the status of producing documents pursuant to the 2004 Subpoena. Debtor's counsel did not respond.

16.    On March 30, 2021, the Trustee asked Debtor's counsel by email again the status of producing documents pursuant to the 2004 Subpoena. Debtor's counsel did not respond.

17.    On April 2, 2021, the Trustee asked Debtor's counsel by email again the status of producing documents pursuant to the 2004 Subpoena. Debtor's counsel did not respond.

18.    On April 5, 2021, Debtor's counsel called the Trustee and said that he would not be getting the documents prior to the April 8, 2021 examination date, so the parties agreed to adjourn the 2004 Examination.

19.    On April 9, 2021, the Trustee asked Debtor's counsel by email the status of the production of the documents and potential dates for the 2004 Examination. Debtor's counsel did not respond directly.

20. On April 14, 2021, Debtor's counsel forwards to the Trustee twenty-two (22) emails with various documents attached.

21. On April 15, 2021, the Trustee sent an email to Debtor's counsel stating that the manner of production via disorganized email forwards was unacceptable and annexing a schedule of document production deficiencies. Debtor's counsel did not respond.

22. On April 21, 2021, the Trustee asked Debtor's counsel by email again the status of producing missing documents and available dates for the 2004 Examination. Debtor's counsel did not respond.

23. On April 28, 2021, the Trustee asked Debtor's counsel by email again the status of producing missing documents and available dates for the 2004 Examination. Debtor's counsel responded and the parties agreed to May 27, 2021 for the Rule 2004 Examination.

24. On May 5, 2021, the Trustee asked Debtor's counsel by email again the status of producing documents pursuant to the 2004 Subpoena. Debtor's counsel did not respond until May 17, 2021.

25. On May 17, 2021, the Debtor produced additional documents and the Trustee again sent a catalog of document production deficiencies to Debtor's counsel.

26. On May 21, 2021, the Trustee again sent the document deficiency catalog to Debtor's counsel and asked that all deficiencies be cured by Monday, May 24, 2021, ahead of the 2004 Examination scheduled for May 27. Debtor's counsel did not respond.

27. On May 24, 2021, the Trustee sent another email to Debtor's counsel requesting confirmation of the May 27, 2021 2004 Examination and that document production deficiencies would be remedied.

28. On May 26, 2021, Debtor's counsel stated by email that the Debtor "has provided

everything he has as for records."

29.   On May 27, 2021, the Trustee, the United States Trustee ("UST") and HFCU conducted the 2004 Examination.

**B.   The Debtor's Failures, Misstatements, Lies and Omissions**

30.   On the Petition Date, the Debtor filed his voluntary petition, his schedules of assets and liabilities (each a "Schedule," collectively, the "Schedules"), and his SoFA. As of the date of this Complaint, the Debtor has not amended any of his Schedules or SoFA.

31.   The Debtor signed declarations under penalty of perjury confirming that the contents of the Schedules and SoFA are true and correct.

32.   On Schedule A, the Debtor testified that he did not own or have legal or equitable interest in any residence, building, land, or similar property. In fact, the Debtor owns real property located at 144 Lucky Lake Drive, Rock Hill, New York 12775 (the "Residence").

33.   On Schedule B, Question 12, the Debtor testified that he did not own any watches or other jewelry. In fact, the Debtor owns a Movado wristwatch as well as other wristwatches.

34.   On his SoFA, Question 15, the Debtor testified that he did not have any losses from gambling. However, the Debtor made the following withdrawals from automated teller machines at various casinos:

| Date of Withdrawal | Location of Bank/ATM | Amount |
|---|---|---|
| Sept. 10, 2019 | Resorts World Catskills Casino, Monticello, NY | $1,006.99 |
| Sept. 13, 2019 | Harrah's Casino, Atlantic City, NJ | $1,005.99 |
| Sept. 16, 2019 | Tropicana Casino, 2831 Boardwalk, Atlantic City, NJ | $1,005.99 |
| Sept. 16, 2019 | Borgata Casino, One Borgata Way, Atlantic City, NJ | $604.99 |
| Nov. 27, 2019 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $505.99 |
| Nov. 29, 2019 | Tropicana Casino, 2831 Boardwalk, Atlantic City, NJ | $1,005.99 |
| Nov. 29, 2019 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $245.99 |
| Dec. 9, 2019 | Borgata Casino, One Borgata Way, Atlantic City, NJ | $1,004.99 |
| Dec. 9, 2019 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $1,005.99 |
| Dec. 11, 2019 | Borgata Casino, One Borgata Way, Atlantic City, NJ | $1,004.99 |
| Jan. 10, 2020 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $1,005.99 |

| Jan. 13, 2020 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $505.99 |
|---|---|---|
| Jan. 17, 2020 | Resorts World Catskills Casino, Monticello, NY | $1,006.99 |
| Feb. 3, 2020 | Resorts World Catskills Casino, Monticello, NY | $1,006.99 |
| July 20, 2020 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $1,005.99 |
| July 27, 2020 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $1,005.99 |
| Aug. 14, 2020 | Borgata Casino, One Borgata Way, Atlantic City, NJ | $1,005.99 |
| Aug. 17, 2020 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $1,005.99 |
| Sept. 4, 2020 | Ocean Casino Resort, 500 Boardwalk, Atlantic City, NJ | $206.95 |
| Sept. 8, 2020 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $1,005.99 |
| Oct. 13, 2020 | Ocean Casino Resort, 500 Boardwalk, Atlantic City, NJ | $1,006.95 |
| Oct. 13, 2020 | Ocean Casino Resort, 500 Boardwalk, Atlantic City, NJ | $706.95 |
| Oct. 13, 2020 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $265.99 |
| Oct. 19, 2020 | Ocean Casino Resort, 500 Boardwalk, Atlantic City, NJ | $1,006.95 |
| Oct. 19, 2020 | Ocean Casino Resort, 500 Boardwalk, Atlantic City, NJ | $1,006.95 |
| Nov. 9, 2020 | Ocean Casino Resort, 500 Boardwalk, Atlantic City, NJ | $506.95 |
| Nov. 9, 2020 | Caesars Casino, 2100 Pacific Ave., Atlantic City, NJ | $1,005.99 |
| Nov. 27, 2020 | Ocean Casino Resort, 500 Boardwalk, Atlantic City, NJ | $1,006.95 |
| Nov. 30, 2020 | Hard Rock Casino, 1000 Boardwalk, Atlantic City, NJ | $1,005.99 |
| | NOTE – December 2020 Bank Statement Not Produced – December 29, 2020 Petition Date | |

(collectively, the "Casino Withdrawals").

35.  The Debtor vehemently denied at the 2004 Examination that the Casino Withdrawals were used for gambling. However, the Debtor's explanations for making the Casino Withdrawals failed to adequately explain their purpose and what happened to the funds. The Debtor explained as follows:

> Q.  What did you use that money for?
>
> A.  I said, I didn't use it. I said if if I did anything, it would be dinner, maybe a show. If we go out and have a drink somewhere, some little Tiki bars that we go to, whatever. I take my family to dinner. I don't know exactly, but that's it.
>
> And I am sure I had whatever. I can say I might have had 900 in my pocket when I came home. It's not like I spent it all.

2004 Examination, p.140.

> Q.  Six days later on October 19, 2020, you withdrew $1,006.95, again from an ATM at 500 Boardwalk, Atlantic City. Do you know what you used that for?

8

> A. Again, I usually keep the money there until I need it. And again, just going out or going - - - when I go home, coming home with most of it. Again, I just don't usually keep a whole lot on me.

Id. at p.142.

> Q. . . . Do you know what that was for?
>
> A. No. I mean, I just - - I - - no specific things. I just go down to see my brother a lot. And you know, just out. He is retired marine. I visit him a lot just to get away from it. I take off for the weekend. Always to take off a couple of days and see him.

Id.

> Q. So, you don't know why you withdrew $906 on November 9, 2020 in Atlantic City at 500 Boardwalk?
>
> A. No. I mean, I bought a girlfriend a jacket or something. I don't look at the price. But the jacket, just things like that. You know, miscellaneous. I have gone shopping in Atlantic City that have a network of stores. Those outlet stores which is right there on the Boardwalk, as well.

Id. at p.143.

> Q. . . . Do you know what that was for?
>
> A. No. No. Just probably - - I would - - I mean explanation was probably just to enjoy myself with my friends and family. That would be the truth, you know. Just to go out, eat, drink, gas, maybe pay for the lady's dinner.

Id. at p.144.

36. On his SoFA, Question 18, the Debtor testified that he did not sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of business. In fact, the Debtor transferred the Yacht, worth approximately $175,000, in the two years prior to the Petition Date.

37. On his SoFA, Question 22, the Debtor testified that he did not store any property in a storage unit or place other than his home within one (1) year of the Petition Date. In fact the Debtor maintains a storage unit in Nanuet, New York (the "Storage Unit"), and has maintained the

9

Storage Unit for the entire year prior to the Petition Date.

38. On January 19, 2021, the Debtor provided to the Trustee income statements for each month from July to November 2020 (collectively the "Income Statements"). The Debtor signed each one of the Income Statements on January 18, 2021. The Income Statements contained a number of material misstatements including that the Debtor paid $3,000 each month for rent, which he did not do.

39. After numerous chances, the Debtor has failed to produce documents related to his financial affairs demanded by the 2004 Subpoena as set forth on Exhibit B (the "2004 Subpoena Document Deficiencies").

40. At the 2004 Examination, the Trustee requested the production of a number of other documents (the "2004 Examination Document Deficiencies") and gave the Debtor thirty days to produce them.

41. On June 18, 2021, the Trustee's counsel sent a letter to Debtor's counsel reminding him of the obligation to produce the 2004 Subpoena Document Deficiencies and the 2004 Examination Document Deficiencies (collectively, the "Document Deficiencies") by the June 28, 2021 agreed deadline. A copy of the letter is annexed hereto as Exhibit C. Debtor's counsel did not respond.

42. On June 28, 2021, the Trustee sent an email to Debtor's counsel reminding him that it was the thirtieth (30th) day after the 2004 Examination and the agreed deadline to produce all Document Deficiencies. The Trustee expressly warned that he intended to object to the Debtor's discharge if he did not hear from Debtor's counsel. As of the date of this Complaint, Debtor's counsel has not responded.

**FIRST CAUSE OF ACTION**
**Objection to Debtor's Discharge – 11 U.S.C. § 727(a)(3)**

**Failure to Keep or Produce Documents and Financial Information**

43.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 42 of this Complaint as if fully set forth at length herein.

44.     Despite numerous requests, the Debtor has not provided any of the Document Deficiencies.

45.     The Debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.

46.     There is no excuse for the Debtor's repeated failure or refusal to produce documents and records despite numerous requests from the Trustee and his express agreement to do so at the 2004 Examination.

47.     Based upon the foregoing, the Trustee is entitled to a judgment against the Debtor denying discharge pursuant to section 727(a)(3) of the Bankruptcy Code.

**SECOND CAUSE OF ACTION**
**Objection to Debtor's Discharge – 11 U.S.C. § 727(a)(4)(A)**

**The Debtor Made False Oaths and Accounts**

48.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 47 of this Complaint as if fully set forth at length herein.

49.     The Debtor knowingly and fraudulently made a number of materially false oaths in connection with his bankruptcy case including the failure to disclose ownership of the Residence on Schedule A, failure to disclose watches owned on Schedule B, failure to disclose losses due to gambling on the SoFA, failure to disclose the Storage Unit on the SoFA, and/or failure to disclose

the Yacht transferred on the SoFA.

50. Based upon the foregoing, the Trustee is entitled to a judgment against the Debtor denying discharge pursuant to section 727(a)(4)(A) of the Bankruptcy Code.

### THIRD CAUSE OF ACTION
### Objection to Debtor's Discharge – 11 U.S.C. § 727(a)(4)(D)

### Withholding Recorded Information From Officer of the Estate

51. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 50 of this Complaint as if fully set forth at length herein.

52. Despite numerous requests, the Debtor has not provided the documents listed in the Document Deficiencies to the Trustee.

53. The Trustee is an officer of the Debtor's estate and is entitled to all documents and recorded information related to the Debtor's assets and financial affairs.

54. The Debtor has withheld from the Trustee recorded information, including books, documents, records, and papers, relating to the Debtor's property or financial affairs.

55. Based upon the foregoing, the Trustee is entitled to a judgment against the Debtor denying discharge pursuant to section 727(a)(4)(D) of the Bankruptcy Code.

### FOURTH CAUSE OF ACTION
### Objection to Debtor's Discharge – 11 U.S.C. § 727(a)(5)

### Failure to Explain Loss of Assets in Casino Withdrawals

56. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 55 of this Complaint as if fully set forth at length herein.

57. In the sixteen (16) months leading up to the Petition Date, the Debtor made not less than $24,680.43 in Casino Withdrawals at ATM machines at well-known casinos in Atlantic City and Monticello.

12

58. The Debtor had no good explanation for the Casino Withdrawals or what the funds were used for and repeatedly denied that they were used for gambling.

59. Regardless of whether the Debtor was being truthful when he testified that the Casino Withdrawals were not used for gambling, his explanation for what the funds were used for is grossly deficient.

60. The Debtor has failed to explain satisfactorily the loss of assets represented by the Casino Withdrawals.

61. Based upon the foregoing, the Trustee is entitled to a judgment against the Debtor denying discharge pursuant to section 727(a)(5) of the Bankruptcy Code.

**FIFTH CAUSE OF ACTION**
**Objection to Debtor's Discharge – 11 U.S.C. §§ 727(a)(6)(A)**

**Debtor's Refusal to Obey the 2004 Order**

62. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 61 of this Complaint as if fully set forth at length herein.

63. The 2004 Order requires the Debtor to timely comply with the terms of the order and the 2004 Subpoena.

64. The Debtor was duly served with the 2004 Subpoena and 2004 Order.

65. The Debtor was again provided with a copy of the 2004 Subpoena and 2004 Order at the 2004 Examination.

66. The Debtor has failed to comply with the 2004 Order by failing to provide all the documents demanded by the 2004 Subpoena, even after being given numerous opportunities to do so and agreeing to do so on the record of the 2004 Examination.

67. Based upon the foregoing, the Trustee is entitled to a judgment against the Debtor denying discharge pursuant to sections 727(a)(6)(A) of the Bankruptcy Code.

13

**WHEREFORE**, the Trustee respectfully requests that a judgment be entered against the Debtor denying discharge and granting such other and further relief as this Court deems just.

Dated:  New York, New York
July 2, 2021

                                **KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Fred Stevens*
      Fred Stevens
      Andrew C. Brown
      200 West 41st Street, 17th Floor
      New York, New York 10036-7203
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: fstevens@klestadt.com
              abrown@klestadt.com

*Counsel to the Plaintiff Fred Stevens, Chapter 7 Trustee*